IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| KAMAAL DUMAKA LEDAY | § | |
| VS. | § | CIVIL ACTION NO. 1:03-CV-1395 |
| UNITED STATES OF AMERICA | § | |

MEMORANDUM OPINION

Movant Kamaal Dumaka Leday, a federal prisoner, proceeding *pro se*, filed this motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255.

Procedural History

On December 6, 2000, a federal grand jury in the Eastern District of Texas returned a three-count indictment charging movant with one count of conspiring with Rodney Palmer, an unindicted co-conspirator, to distribute crack cocaine, and two counts of distributing crack cocaine.

At movant's initial appearance on January 5, 2001, Nolan LeBlanc was appointed to represent him. The case was set for docket call on May 7, 2001. At docket call, movant orally requested to discharge his attorney and represent himself. After warning movant about the dangers of self-representation, the Court allowed movant to represent himself, but directed Mr. LeBlanc to remain as stand-by counsel.

Movant proceeded to a jury trial on July 25, 2001. After a three-day trial, the jury found movant guilty of all three counts. On November 20, 2001, movant was sentenced to 121 months of imprisonment on each count, with the sentences to run concurrently.

Movant filed a notice of appeal and requested appointment of counsel. The Office of the Federal Public Defender was appointed to represent movant. On appeal, movant argued that the

evidence was insufficient to support his convictions. The Fifth Circuit summarized the evidence as follows:

> The trial evidence established that, on both June 11 and July 7, 1999, a confidential informant ("CI") paged a man called "K.D.," a nickname ascribed to Leday, at a pager number to which Leday subscribed. Leday subsequently returned the CI's pages from phone numbers assigned, respectively, to the houses where the mother of his child lived and where Leday himself lived, and cocaine base transactions were arranged. In the first of these transactions, on June 11, 1999, Leday could not personally deliver the cocaine base because he was having bedroom furniture delivered to his home, a fact that was confirmed at trial by a representative of the furniture store. Leday sent a "partner" named Rodney in his stead to deliver the cocaine base to the CI and an undercover officer. In the second transaction, on July 7, 1999, Leday, as identified in court, personally appeared in a candy-apple red Suburban that was registered to the mother of his child and completed the transaction with the CI.

*United States v. Leday*, No. 01-41421 (5th Cir. Aug. 16, 2002) (unpublished). The Fifth Circuit found that this evidence was sufficient to support movant's conviction with respect to each count. *Id*.

## The Motion to Vacate Sentence

Movant asserts that he represented himself at trial because counsel had provided ineffective assistance by failing to thoroughly investigate the case and prepare a defense. Movant contends that his decision to waive his right to counsel was not made voluntarily, intelligently and competently. Movant contends that the custodial statements he made to Federal Bureau of Investigations ("FBI") Special Agent Norman Townsend were coerced and, therefore, they were improperly admitted into evidence. Next, movant contends that he was entitled to jury instructions on misidentification and his defense theory based on the Uniform Commercial Code. Movant complains that the government violated the rule announced in *Brady v. Maryland*, 373 U.S. 83 (1963), by identifying Rodney Palmer as a potential witness, but failing to call him to testify at trial. Movant contends the

government committed misconduct by showing the jury an old photograph of the individual movant claimed had committed the offenses. Movant asserts that the evidence is insufficient to support his convictions. Finally, movant contends that his sentence is unconstitutional because it was enhanced based on conduct that was not proven to the jury beyond a reasonable doubt. *See United States v. Booker*, 543 U.S. 220, 244 (2005).

Standard of Review

Title 28 U.S.C. § 2255 permits the district court, in certain instances, to vacate a judgment and release or resentence the prisoner, grant the prisoner a new trial, or otherwise correct the sentence. The statute provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.

Following a conviction and exhaustion of the right to direct appeal, a criminal defendant is presumed to stand fairly and finally convicted. *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991) (en banc), *cert. denied*, 502 U.S. 1076 (1992). Thus, relief under Section 2255 is reserved for violations of constitutional rights and for a narrow range of errors that could not have been raised on direct appeal and would result in a complete miscarriage of justice if allowed to go uncorrected. *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992). Even if the movant alleges an error of constitutional magnitude, he generally may not raise the issue for the first time on collateral review without showing cause for the procedural default and actual prejudice resulting from the error.

*Shaid*, 937 F.2d at 232. However, claims based on ineffective assistance of counsel may be raised for the first time in a collateral proceeding, whether or not the issue could have been raised on direct appeal. *Massaro v. United States*, 538 U.S. 500, 509 (2003).

Analysis

*Ineffective Assistance of Counsel*

Movant contends that court-appointed counsel was ineffective for failing to thoroughly investigate the case and prepare a defense. In order to establish ineffective assistance of counsel, movant must prove counsel's performance was deficient and the deficient performance prejudiced movant's defense. *Strickland v. Washington*, 466 U.S. 668, 689-92 (1984). Because the movant must prove both deficient performance and prejudice, failure to prove either will be fatal to his claim. *Johnson v. Scott*, 68 F.3d 106, 109 (5th Cir. 1995).

Judicial scrutiny of counsel's performance is highly deferential. *Strickland*, 466 U.S. at 689. As a result, there is a strong presumption that counsel rendered reasonable, professional assistance and that the challenged conduct was the result of a reasoned trial strategy. *Id.*; *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). To overcome the presumption that counsel provided reasonably effective assistance, movant must prove his attorney's performance was objectively unreasonable in light of the facts of movant's case, viewed as of the time of the attorney's conduct. *Strickland*, 466 U.S. at 689-90. A reasonable, professional judgment to pursue a certain strategy should not be second-guessed. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).

In addition to proving counsel's performance was deficient, movant is required to show prejudice resulting from counsel's inadequate performance. *Strickland*, 466 U.S. at 691-92. Movant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of

4

the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Mere allegations of prejudice are insufficient; movant must affirmatively prove, by a preponderance of the evidence, that he was prejudiced as a result of counsel's deficient performance. *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994), *cert. denied*, 514 U.S. 1071 (1995).

Nolan LeBlanc was appointed to represent movant on January 5, 2001. The first trial setting was March 5, 2001. Movant contends that he met with Mr. LeBlanc during the third week of January, 2001. At that time, movant contends that counsel had not finished investigating the case. Movant also complains that counsel appeared to think he was guilty and was interested in finding out what terms the government might offer in a plea agreement.

Movant has not demonstrated that counsel's performance was deficient. Counsel did not perform deficiently by failing to have the case thoroughly investigated, and a defense theory prepared, within two or three weeks after he was appointed, and six weeks before the first trial setting. Counsel was not required to prepare and present a frivolous defense based on the Uniform Commercial Code, as requested by the movant. Counsel acted reasonably and professionally by ascertaining what terms the government would be willing to offer in a plea agreement. Although movant complains that his attorney seemed to think he was guilty, there is no constitutional right to a criminal defense attorney who believes in his client's innocence.

*Self-Representation*

A defendant in a criminal case has a right under the Sixth and Fourteenth Amendments to represent himself. *Faretta v. California*, 422 U.S. 806, 807 (1975). In order to assert his right to self-representation, the defendant must knowingly and intelligently waive his right to counsel after

being made aware of the dangers and disadvantages of self-representation. *Martinez v. Court of Appeal of California*, 528 U.S. 152, 161-62 (2000);*United States v. Virgil*, 444 F.3d 447, 453 (5th Cir.), *cert. denied*, _ U.S. _ , 127 S. Ct. 365 (2006).  Although the district court is required to ensure that a waiver is valid, there is "no sacrosanct litany for warning defendants against waiving the right to counsel." *United States v. Jones*, 421 F.3d 359, 363 (5th Cir. 2005).

     At docket call on May 7, 2001, movant informed the court that he wished to relieve his attorney of his duties.  Movant also filed documents concerning a defense based on the Uniform Commercial Code.  (Transcript of May 7, 2001 pretrial hearing at 1-4.)  After reviewing the documents, the court explained the criminal charges in the indictment and advised movant that the Uniform Commercial Code had nothing to do with his criminal case.  (Tr. at 3-4.)  The transcript reflects the following exchange between the district court and the movant:

    Court:  . . . . Now, do you want Mr. LeBlanc to represent you?

    Defendant:  No, sir.  I'm relieving him of his duties.

    Court:  So, you're going to represent yourself?

    Defendant:  Yes, sir.

    Court:  Are you incarcerated now on this case?

    Defendant:  No, sir.

    Court:  Okay.  You're released on conditions of release?

    Defendant:  Yes, I am.

    Court:  Okay.  Now, you understand that if you represent yourself at a trial on this matter, you're at a disadvantage.  Do you understand that?

    Defendant:  I understand what you're saying.

>Court: Do you understand that the government will be represented by a lawyer, Mr. Jenkins right here?
>
>Defendant: I understand what you're saying.
>
>Court: You're going to have to know the rules of evidence. Do you understand that?
>
>Defendant: I understand what you're saying.
>
>Court: You can't stand up before a jury and read something like that [document concerning UCC defense] that has nothing to do with this criminal case. I won't let you do that because that's a waste of time. Now, are you sure you don't want a lawyer to represent you on this case?
>
>Defendant: Yes, sir.
>
>Court: Do you understand that the court has no obligation to help you simply because you don't have a lawyer during your trial?
>
>Defendant: I understand.
>
>Court: Do you understand that, as a matter of fact, I cannot help one side or the other?
>
>Defendant: I understand.
>
>Court: Do you understand that if at the end of the trial the jury finds you guilty on one or more counts, you could not argue on appeal ineffective assistance of counsel when you have waived counsel?
>
>Defendant: I understand.

(Tr. at 4-6.) After this exchange, the court allowed movant to represent himself, but appointed Mr. LeBlanc as standby counsel. (Tr. at 6.) The court explained the role of standby counsel to movant who indicated that he understood Mr. LeBlanc's role in his defense. (Tr. at 7-8.)

The record demonstrates that the court warned movant about the dangers and disadvantages of self-representation. The records also shows that movant understood the nature of the charges against him and the proceedings. Although movant contends that he was not competent to waive

counsel, there is no support in the record for this assertion.  Movant contends that counsel and the district court should have realized he was incompetent based on his desire to pursue a frivolous defense based on the UCC.  However, in the absence of any abnormal behavior, movant's desire to pursue a frivolous defense was not sufficient to put counsel and the district court on notice that movant might not be competent to waive his right to counsel.

*Admission of Custodial Statements*

Movant contends that the court erroneously admitted into evidence custodial statements that he had made.  In *Miranda v. Arizona*, the Supreme Court concluded that the possibility of coercion inherent in custodial interrogations raises the risk that a suspect's right against self-incrimination might be violated.  *United States v. Patane*, 542 U.S. 630, 639 (2004); *Miranda v. Arizona*, 384 U.S. 436, 467 (1966).  To protect against this danger, *Miranda* creates a presumption that a confession given during a custodial interrogation is coerced, in the absence of specific warnings.  *Patane*, 542 U.S. at 639.  A suspect may waive his right to remain silent, but the waiver must be made voluntarily, knowingly, and intelligently.  *Miranda*, 384 U.S. at 444.  In determining whether the waiver was valid, the court must look at the totality of the circumstances surrounding the interrogation.  *United States v. Foy*, 28 F.3d 464, 474 (5th Cir. 1994).

During trial, FBI Special Agent Norman Townsend testified that he and Drug Enforcement Special Agent Mike Willett met with movant at the federal courthouse lockup facility after his arrest, but before his initial appearance.  (Transcript of Jury Trial, Vol. 1 at 183, 188.)  Special Agent Townsend testified that he read the *Miranda* warnings to movant from an advice of rights form.  (Tr. Vol. 1 at 183-84.)  Special Agent Townsend testified that movant acknowledged that he understood his rights and was willing to answer some questions, but could not sign the form because they were

separated by a protective plexiglass screen. (Tr. Vol. 1 at 185.) Movant objected to the admissibility of the advice of rights form because his signature was not on the document. (Tr. Vol. 1 at 186.) The court overruled the objection, but then, *sua sponte*, conducted a hearing outside the presence of the jury to determine whether movant's statements were voluntary. (Tr. Vol. 1 at 186-93.)

During the hearing, Special Agent Townsend testified that he did not promise movant anything if he would talk, or threaten him with adverse consequences for refusing to talk. (Tr. Vol. 1 at 191.) Special Agent Townsend testified that movant seemed to understand the questions and was cooperative to the extent that he agreed to listen to the agents and to answer some questions, but declined to answer others. (Tr. Vol. 1 at 191.) Although allowed an opportunity by the court, movant did not ask Special Agent Townsend any questions regarding the voluntariness of his statement. (Tr. Vol. 1 at 192.) At the conclusion of the hearing, the court found that there were three statements at issue: (1) Trishaunda Castille was the mother of movant's baby; (2) Trishaunda Castille owned the red Suburban; and (3) movant knew Rodney Palmer. (Tr. Vol. 1 at 193.) The court found that these statements were voluntarily made, and they were admissible as evidence. (Tr. Vol. 1 at 193.)

Movant contends the advice of rights form was invalid because he did not sign the form. However, there is no constitutional requirement that movant sign a waiver of his rights. Movant also contends that Special Agent Townsend obtained the statement by the use of physical or psychological coercion. However, movant offers no factual support for these conclusory allegations. *See United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (holding that conclusory allegations are insufficient to raise a constitutional issue). Therefore, this ground for review lacks merit.

*Brady Claim*

Due process is violated when the prosecution withholds evidence that is both favorable to the accused and material to either guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). This rule also applies to evidence that might be used for impeachment purposes. *Edmond v. Collins*, 8 F.3d 290, 293 (5th Cir. 1993). In order to prevail on a *Brady* claim, movant must prove three elements: 1) the prosecution suppressed or withheld evidence, 2) which evidence is favorable, and 3) material to the defense. *United States v. Stephens,* 964 F.2d 424, 435 (5th Cir. 1992). Evidence is material if there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different." *United States v. Bagley,* 473 U.S. 667, 682 (1985).

Movant complains that the government withheld evidence by failing to call Rodney Palmer, the unindicted co-conspirator to testify. The government replies that Palmer was not called to testify because he was a reluctant witness and because the government felt that his testimony was unnecessary in light of the evidence presented at trial. The government is not required to call every potential witness. Although movant could have called Palmer to testify, he did not.

*Non-constitutional Issues*

Movant contends that he was entitled to jury instructions on misidentification and his defense theory based on the Uniform Commercial Code. Movant also contends the government committed misconduct by showing the jury an old photograph of the individual movant claimed had committed the offenses. These issues do not implicate constitutional rights and could have been raised on direct appeal. The alleged errors are not fundamental defects that would result in a complete miscarriage

of justice if allowed to go uncorrected. *See Vaughn*, 955 F.2d at 368. Thus, they do not serve as the basis for relief in a Section 2255 motion.

*Insufficient Evidence*

Movant argues that the evidence was insufficient to support his convictions. This issue was raised and decided on direct appeal. Therefore, this court is not required to reconsider the issue. *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986), *cert. denied*, 476 U.S. 1118 (1986).

*Booker Claim*

In *United States v. Booker*, the Supreme Court concluded that the mandatory nature of the United States Sentencing Guidelines made them incompatible with the Sixth Amendment's guarantee of the right to a jury trial where "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict [was not] admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 543 U.S. at 244. Because *Booker* was not decided until after movant's conviction became final, it applies to his case only if it is the type of decision that should be applied retroactively to cases on collateral review.

The Fifth Circuit has found that *Booker* does not apply retroactively to cases on collateral review. *United States v. Gentry*, 432 F.3d 600, 605 (5th Cir. 2005). Therefore, the rule announced in *Booker* does not provide movant with a basis for relief in this proceeding.

Conclusion

For the reasons set forth above, this motion to vacate, set aside or correct sentence is hereby denied. A final judgment will be entered in accordance with this memorandum opinion.

**SIGNED** this  27  day of              February             , 2007.

*Richard A. Schell*
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE